MARY MILLER, Appellant, v. GEORGE E. HUGHES AND H. C. STEVENS.

**Forfeiture.** The buyer of land assumed a mortgage and agreed to a forfeiture should there be a default in any payment coming due on the mortgage. There was default. *Held*, the fact that the owner of the assumed mortgage knew of the agreement to assume and notified the buyer of maturing interest was not such an acceptance of the assumption as to preclude the seller from declaring a forfeiture for default in payment; for, without acceptance, no liability remained on the assumption, after the contract embodying it was canceled.

*Appeal from Calhoun District Court.*—HON. CHARLES D. GOLDSMITH, Judge.

FRIDAY, MAY 31, 1895.

Action in equity to restrain the defendants from declaring and enforcing a forfeiture of a certain contract in writing for the sale of real estate described; for an accounting under the contract, and a decree compelling the defendants to accept performance thereof, and to quiet title in the plaintiff. Decree was entered dismissing plaintiff's petition, and quieting title in the defendants, as prayed in their cross petition. Plaintiff appeals. Other persons were made parties, who disclaim any interest, and therefore need not be further noticed.—*Affirmed.*

*W. H. Healy* and *Botsford, Healy & Healy* for appellant.

*Stevenson & Lavender* for appellees.

Given, C. J.—I.    The following facts are shown by the pleadings and evidence, and sufficiently indicate the issues:  On December 14, 1891, the defendant Hughes was the holder of the legal title to the eighty acres of land involved in this controversy, the equitable title being in him and the firm of Mallison & Stevens. On said day, Hughes, as party of the first part, and plaintiff, Mary Miller, as party of the second part, entered into a written contract for the sale and purchase of said eighty acres of land, the parts of which contract necessary to be noticed are, in substance, as follows:  The party of the first part agreed to sell to the party of the second part said land, "on the performance of the agreements of the party of the second part, as hereinafter mentioned."    The party of the second part agreed to purchase said land for the sum of one thousand six hundred dollars, to be paid as follows: Five dollars on the execution of the agreement; three hundred and seventy-five dollars, April 1, 1892; one hundred dollars, January 1, 1893; two hundred and twenty-six dollars and fifty cents, January 1, 1894,— "subject to one hundred mortgage due March 1st, 1893, and eight hundred dollars due January 1, 1896, and all interest on said inc. from this date, with interest from this date at the rate of 7 per cent. per annum on such sums as shall remain unpaid, payable annually till all is paid."    Said written contract contains this further provision:  "And the party of the second part shall also annually pay all taxes and assessments that may accrue on said property, as they become due, or before they become delinquent, and including the tax for the year 1891.    And it is expressly agreed by and between

the parties hereto that the time and times of payment of said sums of money, interest, and taxes as aforesaid is the essence and important part of the contract, and that if any default is made in any of the payments or agreements above mentioned, to be performed by the party of the second part, in consideration of the damage, injury, and expense thereby resulting, or that may be incurred by or to the party of the first part thereby, this agreement shall be void and of no effect, and the party of the second part shall have no claim, in law or equity, against the party of the first part, nor to the above-mentioned real estate, or any part thereof; and any claim or interest or right the party of the second part may have had hereunder up to that time, by reason hereof, or of any payments and improvements made hereunder, shall, on all such default, cease and determine and become forfeited, without any declaration of forfeiture, re-entry, or any act of the party of the first part; and if the party of the second part, or any other person or persons, shall be in the possession of said real estate, or any part thereof, he or they will peacefully remove therefrom, or, in default thereof, he or they may be treated as tenants holding over unlawfully after the expiration of a lease, and may be ousted and removed as such. But if such sums of money, interest, and taxes are paid as aforesaid, promptly at the time aforesaid, the party of the first part will, on receiving said money and interest, execute and deliver, at his own cost and expense, a warranty deed of said premises, as above agreed." This contract was executed in duplicate, one copy to each party, and the plaintiff made the payment of five dollars, and went into possession of the land. Thereafter, defendant Stevens of the firm of Mallison & Stevens, sold his interest in the contract to Mallison. Hughes and Mallison made a settlement, by which each became an owner of an undivided one-half of the equity in the land, and thereafter Mallison sold

his interest to the defendant H. C. Stevens; and thus the ownership in the land and contract stood at the commencement of this action. The eight hundred dollar mortgage referred to in the contract was payable to the Fidelity Loan & Trust Company of Sioux City; and the one hundred dollar mortgage, to another party. On the fourth day of April, 1892,—four days after the same became due,—plaintiff paid to the defendant Hughes said payment of three hundred and seventy-five dollars, with interest. She also paid the interest on said eight hundred dollar debt from the date of the contract to April 1, 1892. Defendant Hughes paid the first and second installments of taxes for the year 1891, and, some fifteen days after he made the first payment, plaintiff paid him the amount thereof, and also paid him the amount of the second installment within one month after he had made the payment. After taking possession, plaintiff made some improvements on the land, amounting to two hundred and fifty dollars. When defendant Hughes acquired title to this land, he assumed and agreed to pay said eight hundred dollar mortgage. Plaintiff failed to make the payment of one hundred dollars due January 1, 1893, and on the twenty-seventh day of January, 1893, the defendants Hughes and Stevens wrote upon the face of the duplicate of said contract in their possession as follows: "The within contract canceled this twenty-seventh day of January, 1893, for reason of nonfulfillment of party of second part. By G. E. Hughes and H. C. Stevens." Thereafter, on the third day of February, 1893, the plaintiff tendered to defendants the amount of said payment, with interest, which they refused to receive, contending that the contract was canceled, and so informing the plaintiff. Following this, defendants caused notice to be served on the plaintiff, demanding immediate possession of said land. As to the foregoing facts, there is no dispute. Plaintiff alleges in her

original petition that the reason why said payment of one hundred dollars was not made at the time it was due was because she had an oral understanding and agreement with the parties to said contract that the time for the payment would be extended, and that time would not be of the essence of the contract, as to that payment, and that plaintiff might have reasonable time to make such payment, but that she should see that the taxes and interest upon the mortgage to the loan and trust company should be paid punctually when the same matured. Plaintiff, in her answer to defendants' cross petition, alleges the same agreement to have been made long prior to the first of January, 1893. Defendant denies that such an agreement was made, and herein is the only material issue of fact involved in the case.

II. As to the alleged agreement extending the time for the one hundred dollar payment, we have the testimony of the plaintiff; of Joseph Mallison, with whom it is claimed the agreement was made; and one Ziegler, who was present at the conversation between the plaintiff and Mallison. It is unnecessary that we set out this evidence. We have read it with care, and reach the conclusion that it fails to establish the alleged agreement, or any facts that justified the plaintiff in believing that any indulgence would be extended to her, or that prompt payment would not be insisted upon. It is questionable whether plaintiff's evidence shows such an agreement, but, if it does, it is fairly contradicted by the testimony of Mallison, who is corroborated to some extent by the testimony of Mr. Ziegler and defendant Hughes.

III. A further contention of appellant is stated as follows: "That inasmuch as Mrs. Miller had become

personally obligated to pay the eight hundred dollar incumbrance to the Fidelity Loan & Trust Company of Sioux City, which indebtedness was at that time also the personal obligation of the defendant Hughes, it is beyond the power of Hughes to forfeit the contract of sale, unless he tendered back to Mrs. Miller whatever papers he had, obligating her to the payment of the said eight hundred dollar mortgage, or tendered and secured a release to her from the Fidelity Loan & Trust Company, of the personal obligation that she assumed." In support of this contention, plaintiff claims, upon the authority of *Bank v. Stiger*, 86 Iowa, 344 [53 N. W. Rep. 265], and other authorities, that "if the amount of the mortgage is, by contract, to be paid as a part of the purchase money, it is an assumption of payment between the grantor and grantee, and not merely taken subject to the mortgage." While said case of the bank was disposed of upon other grounds, we said therein as follows: "The authority cited as well as others which we have examined, are in harmony in holding that where the purchase is subject to a mortgage, and the amount of the mortgage has been retained by the purchaser out of the purchase price, he will be held to have assumed the payment of the mortgage, and is liable in an action to the mortgagee, under the familiar rule that, where a person makes a promise to another for the benefit of a third person, such third person may maintain an action thereon." Appellant further claims that, as between her and Hughes, one is principal and the other surety, and that the loan and trust company may treat both of them as principal debtors, and maintain an action against both, or either of them. It is further insisted that equity requires that before defendants forfeit the contract they must surrender to the plaintiff all obligations which she does not specifically agree to forfeit in her contract, and that until they do

so they cannot enforce a forfeiture. For the purposes of this case, these claims of plaintiff as to the law may be conceded, yet the inquiry remains whether, under this contract, the plaintiff remained in any wise liable for the payment of the eight hundred dollars after forfeiture, and whether there was anything to return to the plaintiff upon a forfeiture being declared. It is said in argument that, if plaintiff had executed her promissory note to the defendants for the deferred payment, they could not forfeit the contract for a failure to make prior payment without surrendering the promissory note to the plaintiff. Plaintiff's promise was to pay the eight hundred dollars in the future,—January 1, 1896,—and is therefore not different from a promise to make a future payment to the defendants. In case of a forfeiture of the contract, plaintiff would be excused from all further payments. She forfeits nothing but what had already been paid. And we think, for the same reason, a forfeiture terminated her liability, whatever it may have been, either to the defendants or the loan company, as to the eight hundred dollars. Whatever rights the loan company accepted, as against the plaintiff, it was subject to the contingency of a forfeiture of the contract in pursuance of its terms, and we do not think that in case of forfeiture the plaintiff would be liable to the loan company, even though, in its absence, she might be. All that plaintiff gave, with respect to the eight hundred dollars, was her promise, as expressed in the contract, to pay that debt in the future. The contract is the only evidence of that promise, and by its cancellation the promise is canceled, and all liability under it terminated. Therefore, there was nothing to return to the plaintiff. It appears that the loan company was informed as to the contract of sale to Mrs. Miller, and that it sent notice to her as to the maturing of interest on the loan. It is contended, on the authority of *Cohrt*

*v. Kock*, 56 Iowa, 658 [10 N. W. Rep. 230], that plaintiff became obligated to the loan company; therefore, defendants could not declare a forfeiture. In that case it is said as follows: "As to the alleged assumption, we have to say that the contract is very obscure. We are not quite prepared to say that the defendant assumed the mortgages. But conceding that he did, we think that the plaintiff was not precluded from rescinding. It does not appear that the mortgagee had done or said anything to indicate his acceptance of the defendant's contract to pay the mortgages, if there was such contract. Under the ruling, then, in *Gilbert v. Sanderson*, 56 Iowa, 349 [9 N. W. Rep. 293], the defendant had incurred no such liability to the mortgagee as to prevent the plaintiff and defendant from making a complete cancellation of the contract, and we think it follows that the defendant had incurred no such liability to the mortgagee as to prevent the plaintiff from rescinding." We do not think that the mere fact that the loan company knew of the contract with plaintiff, and had notified her as to the maturing of interest, indicates such an acceptance of her promise to pay the mortgage as would preclude the defendants from standing upon their contract. The company must have accepted the promise upon the condition upon which it was made, namely, that plaintiff would make that future payment if the contract was not forfeited for prior failures. While it is true that forfeitures are not favored, and that their enforcement often results in hardship, yet it is for the parties, and not for the courts, to make their contracts. Whether defendants waived forfeiture because of plaintiff's failure to pay the tax and the first payment at maturity, by afterward receiving the amount from her, we need not determine. It is not questioned but that she failed to pay the one hundred dollars January 1, 1893; and, as we have seen, she has failed to establish an agreement for

extension of time for said payment. By the contract, plaintiff expressly agreed that time of payment "is the essence and important part of the contract," and that if any default was made in any of the payments the agreement should be void and of no effect, and that her interest or right to the real estate should "cease and determine, and become forfeited." Counsel discuss at some length the question whether the failure to make the first payment and to pay taxes when due did not work a forfeiture of the contract without any declaration upon the part of the parties thereto. This question we do not consider, because it is evident that neither party treated the contract as forfeited by those failures, but both stood upon it as a contract in full force. It was only when the plaintiff failed to make the payment of one hundred dollars that the contract was treated as forfeited; and our conclusion is, upon the whole record, that the defendants had the right, because of that failure, to so treat the contract, and that the decree of the district court should be *affirmed*.